UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

| | | |
|---|---|---|
| JOSEPH GRADWELL,<br>CHRISTOPHER MILLER,<br>GREG MUITER, and MELANIE<br>VAUGHAN, | )<br>)<br>)<br>) | Case No.: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SUNFLORA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT**
**DECLARATORY RELIEF REQUESTED**
**JURY TRIAL DEMANDED**

Plaintiffs Joseph Gradwell ("Gradwell"), Christopher Miller ("Miller"), Greg Muiter ("Muiter"), and Melanie Vaughan ("Vaughan," collectively with Gradwell, Miller, and Muiter, "Plaintiffs" or "Franchisees"), by and through their undersigned attorneys, sue Defendant SunFlora, Inc. ("Sunflora") seeking declaratory relief and damages, and allege as follows:

**INTRODUCTION**

1.      This action arises from the unlawful actions taken by SunFlora whereby SunFlora took advantage of the Franchisees and induced them to enter into lucrative, one-sided franchisor-franchisee relationships without complying with federal and Florida law.

2.      In 2019, each of the Franchisees entered into an "affiliate" agreement with SunFlora pursuant to which they agreed to operate stores selling cannabidiol ("CBD") products under the service mark "Your CBD Stores" in the western Pennsylvania region.

3.      As set forth in the "affiliate" agreements:

> "Your CBD Store vision and business model is to educate and help people understand the benefits of CBD Industrial Hemp Oils by providing a nice, inviting, clean boutique style front store with visible shelves, lounge area with couches and checkout counter. Affiliates shall hire professionals that have a true passion to help people find alternative and natural healing. Our Goal at Your CBD Store is to help like-minded entrepreneurs reach success by offering a business model and marketing tools to make starting and operating an affiliate CBD Store in their market as duplicable and successful as possible."

4.      Prior to signing the "affiliate" agreements, none of the Franchisees were provided a "franchise disclosure document" as required by Federal Trade Commission Amended Franchise Rule, 16 C.F.R. Part 436 ("FTC Franchise Rule").

5.      A "franchise disclosure document" is a legal document that must be delivered to any parties interested in buying a franchise within the United States as part of the pre-sale disclosure process.  It contains essential information that the Federal Trade Commission ("FTC") has determined is important for prospective franchisees to consider and analyze before investing large amounts of money, time and energy into a franchisor-franchisee relationship.

6.      In this case, SunFlora unlawfully attempted to skirt compliance with the FTC Franchise Rule by having each of the Franchisees sign an "affiliate"

agreement mischaracterizing the Franchisees as "affiliates" when they are actually "franchisees."

7.     Unbeknownst to the Franchisees at the time they signed their "affiliate" agreements, in the years that followed, SunFlora would require the Franchisees to make "required payments" (as defined in the FTC Franchise Rule) in two different ways that caused the contractual relationships to be "franchises" sold in violation of the FTC Franchise Rule.

8.     The Franchisees now bring the below claims for rescission of the "affiliate" agreements, declaratory relief, and money damages, alleging violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §501.201 *et seq*., Florida common law, and Fla. Stat. § 542.355.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over the Franchisees' claims pursuant to 28 U.S.C. §1332 because there is an actual controversy over rights valued in excess of $75,000.

10.    Venue is proper within this judicial district under 28 U.S.C. § 1391 because SunFlora is resident in this District and a substantial part of the events on which Franchisees' claims are based occurred in this District.

## PARTIES

11.     Plaintiffs are all individuals resident in the Commonwealth of Pennsylvania.

12.     Defendant SunFlora, Inc. is a for-profit Florida corporation with a principal place of business of 600 8th Ave. W., Suite 400, Palmetto, FL 34221.

## FTC FRANCHISE RULE

13.     Section 436.1 of the FTC Franchise Rule provides the following pertinent definitions:

> (b)     *Affiliate* means an entity controlled by, controlling, or under common control with, another entity.
>
> (h)     *Franchise* means any continuing commercial relationship or arrangement, whatever it may be called, in which the terms of the offer or contract specify, or the franchise seller promises or represents, orally or in writing, that:
>
> > (1)     The franchisee will obtain the right to operate a business that is identified or associated with the franchisor's trademark, or to offer, sell, or distribute goods, services, or commodities that are identified or associated with the franchisor's trademark;
> >
> > (2)     The franchisor will exert or has authority to exert a significant degree of control over the franchisee's method of operation, or provide significant assistance in the franchisee's method of operation; and
> >
> > **(3)     As a condition of obtaining or commencing operation of the franchise, the franchisee makes a required payment or commits to make a required payment to the franchisor or its affiliate.  (Emphasis added).**
>
> (i)     *Franchisee* means any person who is granted a franchise.
>
> (j)     *Franchise seller* means a person that offers for sale, sells, or arranges for the sale of a franchise. It includes the franchisor and the franchisor's employees, representatives, agents, subfranchisors, and third-

party brokers who are involved in franchise sales activities. It does not include existing franchisees who sell only their own outlet and who are otherwise not engaged in franchise sales on behalf of the franchisor.

(k) ***Franchisor*** means any person who grants a franchise and participates in the franchise relationship. Unless otherwise stated, it includes subfranchisors. For purposes of this definition, a "subfranchisor" means a person who functions as a franchisor by engaging in both pre-sale activities and post-sale performance.

(m) **Parent** means an entity that controls another entity directly, or indirectly through one or more subsidiaries.

(p) **Predecessor** means a person from whom the franchisor acquired, directly or indirectly, the major portion of the franchisor's assets.

(s) ***Required payment*** means all consideration that the franchisee must pay to the franchisor or an affiliate, either by contract or by practical necessity, as a condition of obtaining or commencing operation of the franchise. **A required payment does not include payments for the purchase of reasonable amounts of inventory at bona fide wholesale prices for resale or lease.  (Emphasis added).**

16 C.F.R. § 436.1.

14.     Under Fla. Stat. § 501.203, violations of the Section 5 of the Federal Trade Commission Act (the "FTC Act") are expressly determined to be violations of FDUTPA.  The failure to comply with the FTC Franchise Rule is a violation of Section 5 of the FTC Act.

15.     The FTC Franchise Rule states that it is an unfair or deceptive act or practice in violation of Section 5 of the FTC Act for any franchise seller (*i.e.*, SunFlora) to fail to furnish a copy of the franchisor's most recent franchise disclosure document to a prospective franchisee before the prospective franchisee signs a franchise agreement. *See* 16 C.F.R. § 436.2.

16.     In this case, the "affiliate agreement" expressly contains the "trademark" and "significant degree of control" elements in the definition of a "franchise."

17.     As to the third element in the definition of a "franchise" "required payment", in this case, SunFlora has mandated that the Franchisees make two different payments which are "required payments" under the FTC Franchise Rule: (1) payments for SUNMED-branded CBD products at prices greatly in excess of bona fide wholesale prices and (2) monthly payments to DANG designs, Inc. ("DANG"), an "affiliate" of SunFlora.

18.     Thus, because SunFlora required the Franchisees to make "required payments" as more fully set forth below, all three of the definitional elements of a "franchise" are present in the "affiliate" agreements.  As a result, Plaintiffs are franchisees under the FTC Franchise Rule such that SunFlora was required to provide Plaintiffs with a franchise disclosure document prior to having them sign an "affiliate" agreement.

19.     SunFlora's failure to provide the Franchisees with a franchise disclosure document is a violation of Section 5 of the FTC Act and, therefore, is a violation of FDUTPA.  It also constitutes fraudulent inducement under Florida law.

**THE FRANCHISE AGREEMENTS**

20.     In 2019, all four of the Plaintiffs signed an "affiliate" agreement with SunFlora.  Gradwell's "affiliate" agreement is attached hereto as <u>Exhibit 1</u>.

6

Miller's "affiliate" agreement is attached hereto as <u>Exhibit 2</u>.  Muiter's "affiliate" agreement is attached hereto as <u>Exhibit 3</u>.  Vaughan has been unable to locate her "affiliate" agreement, which she signed on or about June 7, 2019, but upon information and belief, Vaughan's "affiliate" agreement contains the same operative terms as the "affiliate" agreements of Gradwell, Miller, and Muiter.  The "affiliate" agreements of Gradwell, Miller, Muiter, and Vaughan are referred to collectively hereinafter as the "Franchise Agreements."

21.    The Franchise Agreements require the Franchisees to expend considerable resources in the form of time, energy and money as necessary to open their stores including, without limitation, locating and obtaining store locations, completing the store build-outs, purchasing inventory for resale and advertising and marketing the stores.

22.    The Franchise Agreements require the Franchisees "to purchase and sell SUNMED branded products in their CBD Store for suggested retail price," and provide that the Franchisees "only carry SUNMED branded products unless SunFlora does not have it on their product line."

23.    SunFlora manufactures and/or distributes SUNMED branded CBD products.

24.    The Franchise Agreements do not specify the purchase price(s) that the Franchisees are to pay for the SUNMED branded products that they are obligated to purchase, and SunFlora did not provide a separate price list informing the Franchisees of the prices they would have to pay for the SUNMED

branded products.  Instead, the Franchisees were delivered a price list only after they executed the Franchise Agreements.

25.     The Franchise Agreements by their express terms also do not require the Franchisees to make any payments to SunFlora or any other entities.

26.     Despite the fact that the Franchise Agreements do not list any prices for SUNMED branded products or otherwise require the Franchisees to make payments to any other entities, SunFlora improperly forced the Franchisees, under threat of termination of their Franchise Agreements, to make two different kinds of payments which constitute "required payments" under the FTC Franchise Rule.

## PAYMENTS TO SUNFLORA FAR IN EXCESS OF BONA FIDE WHOLESALE PRICES FOR SUNMED PRODUCTS

27.     In some circumstances, payments for the purchase of inventory may not be considered a "required payment" under the FTC Franchise Rule, but only when the amount charged for the inventory is at "bona fide wholesale prices."

28.     In this case, after SunFlora lured the Franchisees into signing the Franchise Agreements despite failing to provide them with the requisite franchise disclosure document, SunFlora required that the Franchisees purchase SUNMED branded products from SunFlora at prices greatly in excess of "bona fide wholesale prices."

29.     In fact, the Franchisees believe and therefore aver – based on market research that they have conducted – that SunFlora has charged the Franchisees

8

prices well in excess of bona fide wholesale prices for SUNMED branded products as shown in the table below.

[Please see next three pages.]

[Remainder of page intentionally left blank.]

| CBD Oil Pricing Analysis – Wholesale Prices for Products Sunmed Products vs. Comparable Products (both contain the same ingredients) | | | | | |
|---|---|---|---|---|---|
| Item Description | Sunmed | CBD Infusionz | Hemp Experts CBD | Moon Walkr CBD | Hemp Doctor |
| 250 mg Broad Spectrum NATURAL | $12 | $8 (150%) | $7 (171%) | | |
| 250 mg Broad Spectrum LEMON | $12 | $8 (150%) | $7 (171%) | | |
| 250 mg Broad Spectrum ORANGE | $12 | $8 (150%) | $7 (171%) | | |
| 250 mg Broad Spectrum MINT | $12 | $8 (150%) | $7 (171%) | | |
| 250 mg Broad Spectrum PEANUT BUTTER | $12 | $8 (150%) | $7 (171%) | | |
| 250 mg Broad Spectrum BACON | $12 | $8 (150%) | $7 (171%) | | |
| 250 mg Full Spectrum NATURAL | $12 | $8 (150%) | $7 (171%) | | |
| 250 mg Full Spectrum STRAWBERRY | $12 | $8 (150%) | $7 (171%) | | |
| 250 mg Full Spectrum BLUEBERRY | $12 | $8 (150%) | $7 (171%) | | |
| 250 mg Full Spectrum CINNAMON | $12 | $8 (150%) | $7 (171%) | | |
| 500 mg Broad Spectrum NATURAL | $20 | | $9 (221%) | | |
| 500 mg Broad Spectrum LEMON | $20 | | $9 (221%) | | |
| 500 mg Broad Spectrum ORANGE | $20 | | $9 (221%) | | |
| 500 mg Broad Spectrum MINT | $20 | | $9 (221%) | | |
| 500 mg Broad Spectrum BACON | $20 | | $9 (221%) | | |
| 500 mg Full Spectrum NATURAL | $20 | | $9 (221%) | | |
| 500 mg Full Spectrum STRAWBERRY | $20 | | $9 (221%) | | |
| 500 mg Full Spectrum BLUEBERRY | $20 | | $9 (221%) | | |
| 500 mg Full Spectrum CINNAMON | $20 | | $9 (221%) | | |
| 750 mg Broad Spectrum NATURAL | $32 | $13 (270%) | | | |
| 750 mg Broad Spectrum LEMON | $32 | $13 (270%) | | | |

| | | | | | |
|---|---|---|---|---|---|
| 750 mg Broad Spectrum ORANGE | $32 | $13 (270%) | | | |
| 750 mg Broad Spectrum MINT | $32 | $13 (270%) | | | |
| 750 mg Full Spectrum NATURAL | $32 | $13 (270%) | | | |
| 750 mg Full Spectrum STRAWBERRY | $32 | $13 (270%) | | | |
| 750 mg Full Spectrum BLUEBERRY | $32 | $13 (270%) | | | |
| 750 mg Full Spectrum CINNAMON | $32 | $13 (270%) | | | |
| 1000mg Broad Spectrum NATURAL | $36 | | $17 (212%) | | |
| 1000mg Broad Spectrum LEMON | $36 | | $17 (212%) | | |
| 1000mg Broad Spectrum ORANGE | $36 | | $17 (212%) | | |
| 1000mg Broad Spectrum MINT | $36 | | $17 (212%) | | |
| 1000mg Full Spectrum NATURAL | $36 | | $17 (212%) | | |
| 1000mg Full Spectrum STRAWBERRY | $36 | | $17 (212%) | | |
| 1000mg Full Spectrum BLUEBERRY | $36 | | $17 (212%) | | |
| 1000mg Full Spectrum CINNAMON | $36 | | $17 (212%) | | |
| 2000mg Broad Spectrum NATURAL | $54 | | $26 (207%) | | |
| 2000mg Broad Spectrum LEMON | $54 | | $26 (207%) | | |
| 2000mg Broad Spectrum ORANGE | $54 | | $26 (207%) | | |
| 2000mg Broad Spectrum MINT | $54 | | $26 (207%) | | |
| 2000mg Full Spectrum NATURAL | $54 | | $26 (207%) | | |
| 2000mg Full Spectrum STRAWBERRY | $54 | | $26 (207%) | | |
| 2000mg Full Spectrum BLUEBERRY | $54 | | $26 (207%) | | |
| 2000mg Full Spectrum CINNAMON | $54 | | $26 (207%) | | |
| 3000mg Broad Spectrum | $72 | | $30 (240%) | | |
| 3000mg Full Spectrum | $72 | | $30 (240%) | | |

**Other CBD Product Pricing Analysis – Wholesale Prices for Products Sunmed Products vs. Comparable Products (These products have similar ingredients, but may have different additives such as flavor or smell, but are essentially the same.)**

| Item Description | Sunmed | CBD Infusionz | Hemp Experts CBD | Moon Walkr CBD | Hemp Doctor |
|---|---|---|---|---|---|
| 25mg CBD Vegan Gummy Broad & Full | $28 | | $14 (200%) | | |
| 25mg CBD Soft Gel | $28 | | $12 (233%) | | |
| CBD/CBN Sleep Gummy | $28 | | $15 (186%) | $20 (140%) | |
| 1000mg topical CBD cream/salve | $38 | $15 (253%) | $17 (223%) | | $28 |
| 300mg peach ring gummies | $14 | | | | $9.25 |
| 300mg watermelon ring gummies | $14 | | | | $9.25 |
| 750mg gummy bears broad spectrum | $28 | | $14 (200%) | | |
| 750mg gummy bears full spectrum | $28 | | $14 (200%) | | |
| 500mg cbd hard candy | $22 | | | | |
| 750mg CBD gel capsule broad spec | $28 | | $12 (233%) | | $20 |
| 750mg CBD gel capsule full spec | $28 | | $12 (233%) | | $20 |
| 250mg CBD pet oil | $12 | | $8 (150%) | | |
| 250mg CBD bacon pet treat | $15 | | $15 | | |
| 750mg CBD/CBN Gummy | $28 | $25 (112%) | $20 (140%) | $20 (140%) | |
| 500mg CBD/CBG oil | $36 | $20 (180%) | | $28 (128%) | |
| 1000mg CBD/CBN oil broad spectrum | $36 | $25 (144%) | | $28 (128%) | |
| 1000mg CBD/CBN oil full spectrum | $36 | $25 (144%) | | $28 (128%) | |

30.     Because SunFlora has charged the Franchisees outrageous, exorbitant prices for SUNMED branded products which are far in excess of bona fide wholesale prices, the amount of the payment in excess of bona fide wholesale prices constitutes a hidden "required payment" under the FTC Franchise Rule

and is the last link in the chain that establishes a franchisor-franchisee relationship between SunFlora and the Franchisees.

31.     The gross revenue of SunFlora under the Franchise Agreements would decrease if SunFlora sold inventory only at "bona fide wholesale prices." In order to compensate for this decrease and maintain its gross revenue at the same amount, SunFlora would have had to fill the gap by requiring the Franchisees to make a different form of payment which would be a "required payment."

32.     The excessive prices paid by the Franchisees for SUNMED branded products have also left the Franchisees with very little room, if any, for profit. Therefore, the Franchisees have attempted to sell alternative CBD products, which are not on SunFlora's product line, in order to generate additional revenue in order to be profitable and keep their stores open and operating.

33.     In response to the Franchisees selling these non-SUNMED branded products, SunFlora has threatened to terminate their Franchise Agreements, which would effectively put the Franchisees out of business. *See* Cease and Desist letters attached hereto as Exhibit 4.

34.     In essence, SunFlora has created a lose-lose situation for the Franchisees – either the Franchisees sell only SUNMED branded products purchased at greater than wholesale price with negligible profit margins, or their Franchise Agreements will be terminated, which termination purports to subject the Franchisees to broad, two-year non-compete prohibitions (though the

Franchisees certainly dispute and would contest that such alleged prohibition is enforceable.

35.    Had the Franchisees known that SunFlora would charge prices for SUNMED branded products in excess of "bona fide wholesale prices" and put them at risk for losing their investments in their businesses if they didn't purchase at those prices, the Franchisees would never have entered into the relationship with SunFlora on such terms.

<div align="center">

**COERCED PAYMENTS TO DANG DESIGNS, INC.**

</div>

36.    After the Franchisees signed their Franchise Agreements, SunFlora immediately required all of the Franchisees to enter into an unwritten financial relationship with DANG.

37.    Thereafter, as set forth in more detail below, DANG performed essentially all of the functions of a franchisor with respect to the Franchisees.

38.    SunFlora instructed the Franchisees to communicate with Grace Naumann, an account manager with DANG, regarding all aspects of their stores.

39.    DANG, through Ms. Naumann, "on-boarded" all of the Franchisees, which included, *inter alia*, completing the following tasks:

(a)    setting up company emails (using cbdrx4u.com);

(b)    setting up online store profiles for the Franchisees' websites, which included stores addresses, store pictures, and maps of store locations;

(c)    setting up the Franchisees' accounts for ordering SUNMED products;

(d)    training the Franchisees on how to order SUNMED branded products through the SUNMED product portal;

(e)    officially activating the Franchisees' "affiliate" accounts;

(f)    managing online sales by SunFlora and allocations of credits back to the Franchisees based upon those sales; and

(g)    providing advertising and promotional literature.

40.    DANG connected the Franchisees to social media and other internet accounts, including on Facebook, Instagram, and Google, and it established a Reputation Manager to manage the Franchisees' online presence.

41.    DANG has served as the Franchisees' contact for product/inventory ordering, promotion, and return issues.

42.    The CEO and founder of DANG, Dan Gysel (who owns and operates a Your CBD Store in the Tampa Bay area), served as the primary administrator on SunFlora's internal intranet where, *inter alia*, all owners of Your CBD Stores could seek advice.  In his communications with the Franchisees, Mr. Gysel used a SunFlora email address.

43.    The Franchisees dealt with DANG, and not SunFlora, regarding SunFlora's new store referral policies and contest.

44.    SunFlora required each of the Franchisees to pay $100 per month to DANG for these services.

45.     Upon information and belief, DANG is an affiliate of SunFlora.

46.     The FTC has issued a Compliance Guide to assist franchisors in complying with their obligations under the FTC Franchise Rule.  On page 5 of the Compliance Guide, there is a discussion of "Required Payments" that is as follows:

### What Types of Payments Constitute "Required Payments"?

"Payment" is intended to be read broadly, capturing all sources of revenue that a franchisee must pay to a franchisor or its affiliate for the right to associate with the franchisor, market its goods or services, and begin operation of the business.  Often, required payments go beyond a simple franchisee fee, entailing other payments that the franchisee must pay to the franchisor or an affiliate by contract – including the franchise agreement or any companion contract.  Required payments may include:

- initial franchise fee;
- rent;
- advertising assistance;
- equipment and supplies (including such purchases from third parties if the franchisor or its affiliate receives payment as a result of the purchase);
- training;
- security deposits;
- escrow deposits;
- non-refundable bookkeeping charges;
- promotional literature;
- equipment rental; and
- continuing royalties on sales.

47.     A comparison of the functions performed by DANG with the list of functions set forth in the FTC Compliance Guide shows a strong correlation.

48.     The payments made by Franchisees to DANG were born of practical necessity and were a condition of continued operation of their franchises.

49.    Thus, the monthly $100 payment to DANG is a second form of "required payment" under the FTC Franchise Rule that causes the relationship between SunFlora, on the one hand, and the Franchisees, on the other, to be that of a "franchise."

## SUNFLORA ATTEMPTS TO HAVE THE FRANCHISEES ENTER INTO "LEGITIMATE" FRANCHISE AGREEMENTS

50.    In recognition of the fact that it violated the FTC Franchise Rule as set forth above, in the Fall of 2021, Your CBD Stores Franchising, LLC ("YCBDSF"), approached the Franchisees, at the direction of SunFlora, its "parent" and "predecessor," and attempted to induce the Franchisees scrap their "affiliate" agreements and convert to a "legitimate" franchise agreement arrangement.    As part of that approach, YCBDSF delivered its franchise disclosure document to the Franchisees.  By doing so, YCBDSF represented to the Franchisees that they could rely upon the franchise disclosure document in making their decision to convert to a "legitimate" franchise arrangement.

51.    As an inducement to the Franchisees to enter into the YCBDSF franchise agreement, YCBDSF offered the Franchisees a discount on all future product purchases if the Franchisees would agree to terminate their "affiliate" agreements and enter into the YCBDSF franchise agreement.

52.    SunFlora is a "predecessor" to YCBDSF under the FTC Franchise Rule because the principal asset of YCBDSF is a royalty-free license of the trademark "YOUR CBD STORE," which it acquired from SunFlora, the owner of the trademark.  SunFlora is also a "parent" to YCBDSF because, through the

highly advantageous royalty-free license of the trademark, SunFlora has the power to control YCBDSF by revoking such license if YCBDSF fails to comply with its directions.   In addition, Item 1 of the YCBDSF franchise disclosure document provides in part:

> "SunFlora, sole owner of Your CBD Stores Franchising, LLC, directly and indirectly provides the franchisor with the following: Capital and funding, professional services, human resources, IP and other intangible assets, including trademarks, back office support, including order and Application Programming Interface ('API') platforms, research and development, and any sort of materials and other tangibles required for the smooth operation of Franchisor."

These relationships evidence the dominant controlling relationship that SunFlora enjoys with YCBDSF.

53.    The Franchisees have not acceded to the pressure brought by SunFlora, by and through YCBDSF, to enter into a franchise agreement in the form attached to the YCBDSF franchise disclosure document.

54.    At the same time, SunFlora delivered the 60-page Operations Manual used by YCBDSF (the "Operations Manual") to the Franchisees and informed them that:

> "You and your team are required to read and comply with terms of the Operations Manual. Failure by you, or your employees to comply with the provisions of the Operations Manual is a violation of your Franchise/Affiliate Agreement and will result in appropriate corrective action, as determined by SunFlora Inc."

Prior to that time, SunFlora had not delivered an Operations Manual to the Franchisees.

55.     The fact that SunFlora and YCBDSF are operating as a combined enterprise is evidenced by the following statement from page 5 of the Operations Manual:

> "Please note that Your CBD Stores Franchising LLC., does business as "Your CBD Stores" as it is your Franchisor. SunFlora® Inc., is an affiliate of Your CBD Store Franchising LLC., and owns all contracts with Affiliates, trademarks, and products available for sale.  Any reference in this Operations Manual to SunFlora and SunFlora Inc., includes by definition Your CBD Stores Franchising LLC., and its DBA "Your CBD Store.""

56.     Under the Franchise Agreements, there is no provision for amendments generally.  The only provision relating to the right of SunFlora to effect a unilateral amendment of the Franchise Agreements is Section 7 which permits SunFlora to make changes to the Franchise Agreements as needed to comply with government rules and regulations.  The only way SunFlora can justify the imposition of the new Operations Manual on the Franchisees is if it is being done to comply with a governmental rule or regulation, *i.e.*, the FTC Franchise Rule which requires a franchisor to have an Operations Manual.

57.     In addition, Item 8 of the YCBDSF franchise disclosure document and Section 9(viii) of the YCBDSF franchise agreement provide that SunFlora is permitted to be the sole source of the products to be sold in the franchised stores. This conclusion is buttressed by Item 7 of the YCBDSF franchise disclosure document which identifies SunFlora as the sole source of the opening inventory of franchised stores and by Item 6 of the YCBDSF franchise disclosure document that provides, in part, as follows:

> "You must buy products that (i) meet our standards and specifications and, (ii) are purchased from suppliers designated or approved by us.  Most, if not all, products must be purchased from our affiliate, SunFlora, Inc.

58.    The FTC has issued a series of frequently asked questions under the FTC Franchise Rule (the "FAQs") that will assist franchisors in complying with their obligations under the FTC Franchise Rule.  The answers to the questions are opinions of the FTC staff charged with enforcement of the FTC Franchise Rule and not the FTC itself.

59.    FAQ 30 deals with the question of whether the financial statements of a "parent" to a franchisor must be disclosed when a franchisor's parent is the sole supplier of a good or service.  The answer to FAQ 30 states:

> "As stated in the Statement of Basis and Purpose, "[t]o the extent that a prospective franchisee is asked to rely on a parent to perform post-sale contractual obligations or relies on a parent's guarantee, the financial stability of the parent becomes a material fact that should be disclosed."
>
> It is staff's view that, even in the absence of an express commitment in the franchise agreement for the franchisor's parent to provide a good or service that is so essential to the franchise that the franchised business cannot be conducted without it, this obligation is implicit in the contractual obligations of the parties. Accordingly, disclosure of the parent's financial statements in Item 21 is required in these circumstances."

Although SunFlora is a "parent" to YCBDSF and is permitted to be the sole source of product supply, the financial statements of SunFlora are not included in the franchise disclosure document of YCBDSF.

60.    In Item 13 of a franchise disclosure document, a franchisor must list all of the trademarks a franchisee will be licensed to use and whether those

trademarks are registered on the Principal Register or the Supplemental Register in the United States Patent and Trademark Office. This disclosure is required because trademarks registered on the Supplemental Register are not afforded as much protection as trademarks registered on the Principal Register.

61. The trademark "YOUR CBD STORE" is registered on the Supplemental Register. Item 13 of the FTC Franchise Rule provides that, if a trademark is registered on the Supplemental Register, the following disclaimer must appear in Item 13 of the franchise disclosure document:

> "If the trademark is not registered on the Principal Register of the United States Patent and Trademark Office, state: 'We do not have a federal registration for our principal trademark. Therefore, our trademark does not have many legal benefits and rights as a federally registered trademark. If our right to use the trademark is challenged, you may have to change to an alternative trademark, which may increase your expenses.'"

62. The initial paragraphs of Item 13 of the YCBDSF franchise disclosure document are as follows:

<div align="center">

**ITEM 13**
**TRADEMARKS**

</div>

> Under the Franchise Agreement, we grant you the non-exclusive right to operate your Store under the name YOUR CBD STORE® and to use the other Marks we authorize you to use.

> The following principal Marks (including the principal trademarks on the FTC cover page) are registered on the Principal Register of the United States Patent and Trademark Office (the "USPTO") and were licensed to us by Sunflora, Inc. in accordance with a license agreement by which we obtained the right to use the Marks for indefinite use, without cost to us. We intend to file affidavits of use, affidavits of incontestability, and renewals, when due, for the following Mark.

| Mark | Serial Number | Filing Date | Registration Number | Registration Date | Owner |
|---|---|---|---|---|---|
| SUNFLORA | 88/498,238 | July 2, 2019 | 6,009,664 | March 20, 2020 | Sunflora, Inc. |
|  | 88/498,448 | July 2, 2019 | 6,049,535 | May 05, 2020 | Sunflora, Inc. |
| YOUR CBD STORE | 88/498,257 | July 2,2019 | 6,092,793. | June 30, 2020 | Sunflora, Inc |

63.    The text of Item 13 evidences an inaccurate disclosure made by YCBDSF that the trademark "YOUR CBD STORE" is registered on the Principal Register and, as a result, the remainder of Item 13 does not contain the mandatory disclaimer required by the FTC Franchise Rule.  For a prospective franchisee, the fact that the trademark under which they will operate their business and on which their investment depends, is a weak trademark that will have to be changed if challenged successfully is critical in the decision to purchase the franchise.  The omission of the FTC mandated disclosure is, thus, a material omission.

64.    Item 20 of the FTC Franchise Rule requires a disclosure of all of the franchisees of a franchisor.  Item 20 of the YCBDSF franchise disclosure document provides that disclosure, but with one noticeable defect. The footnote to the Item 20 listing of franchisees states as follows:

Table No. 1 Systemwide Outlet Summary
For years 2018/2019/2020

| Outlet Type | Year | Outlets at the Start of the Year | Outlets at the End of the Year | Net Change |
|---|---|---|---|---|
| Franchised | 2018 | 0 | 0 | 0 |
| | 2019 | 0 | 0 | 0 |
| | 2020 | 0 | 161 | +161 |
| Company-Owned | 2018 | 0 | 0 | 0 |
| | 2019 | 0 | 0 | 0 |
| | 2020 | 0 | 1 | +1 |
| Total Outlets | 2018 | 0 | 0 | 0 |
| | 2019 | 0 | 0 | 0 |
| | 2020 | 0 | 162 | +162 |

**\* As of December 31, 2020 we had 363 licensed distribution stores (Affiliate Licensees), none of which were franchised units.**  (Emphasis added).

Based upon the showing that the "affiliate" agreements entered into between SunFlora and the Franchisees are, in fact, franchise agreements, the footnote in Item 20 is a further example of an inaccurate disclosure.

65.    These actions on the part of SunFlora are further evidence that SunFlora and YCBDSF continue to disregard their obligations under the FTC Franchise Rule.

## COUNT I
## DECLARATORY RELIEF UNDER FDUTPA,
## FLA. STAT. §501.201 *ET SEQ.*

66.    The Plaintiffs repeat and re-allege paragraphs 1-65 as if set forth in full herein.

67.    SunFlora committed a *per se* violation of FDUTPA by violating the FTC Franchise Rule through failing to furnish the Franchisees with a franchise

disclosure document at least 14 calendar-days before the Franchisees signed the Franchise Agreements.  *See* 16 C.F.R. § 436.2(a).

68.    As a result of the conduct and the excessive wholesale prices charged by SunFlora described above, which are a violation of FDUTPA, the Plaintiffs have and will continue in the future to sustain damages and irreparable harm to their businesses.

69.    Because SunFlora failed to provide a franchise disclosure document to the Franchisees as required, it has violated the FTC Act and, consequently, has violated FDUTPA.  *See* Fla. Stat. § 501.203.

WHEREFORE, the Plaintiffs respectfully request that this Court enter judgment as follows:

(a)    A declaration that the Franchisees' payments to (1) SunFlora for SUNMED product in excess of "bona fide wholesale prices" and (2) DANG designs, Inc. constitute "required payments" under the FTC Franchise Rule;

(b)    A declaration that SunFlora has violated Section 5 of the FTC Act by failing to provide the Franchisees with a franchise disclosure document as required by the FTC Franchise Rule prior to the execution of the Franchise Agreements;

(c)    A declaration that the Franchisee Agreements are unlawful and therefore, are not enforceable;

(d)   An award of attorney's fees and costs pursuant to Fla. Stat. § 501.2105; and

(e)   Such other relief as this Court may deem to be just, proper, and equitable.

**COUNT II**
**FRAUDULENT INDUCEMENT**

70.   The Plaintiffs repeat and re-allege paragraphs 1-65 as if set forth in full herein.

71.   SunFlora fraudulently induced the Franchisees into signing the Franchise Agreements.

72.   Under the FTC Franchise Rule, because the relationship between SunFlora and the Franchisees is a franchise, SunFlora was required to provide the Franchisees with a franchise disclosure document before the Franchisees signed the Franchise Agreements.

73.   A franchise disclosure document is required to disclose the extensive list of information set forth in 16 C.F.R. § 436.5 including, *inter alia*, the fees that the Franchisees were forced to pay to DANG that would have enabled the Franchisees to properly evaluate the decision to enter into the "affiliate" agreements.

74.   The audited financial statements of YCBDSF are illustrative in this regard.   YCBDSF was formed on October 14, 2019 and, for its fiscal year ended December 31, 2019, it incurred no legal fees.   But, in 2020, the calendar year in

which YCBDSF first prepared a franchise disclosure document and sold 162 franchises, its legal fees were $96,842. This is the capital investment avoided by selling "affiliate" agreements without a franchise disclosure document.

75.     SunFlora knew that it was required under the FTC Franchise Rule to provide the Franchisees with all of the material information set forth in 16 C.F.R. § 436.5.

76.     Nevertheless, SunFlora had the Franchisees sign "affiliate" agreements, as opposed to "franchise" agreements, in a knowing and intentional attempt to obtain the benefits of a franchise relationship without making the capital investment necessary to prepare a compliant franchise disclosure document.

77.     If SunFlora wanted to sell "affiliate" agreements without a franchise disclosure document, it would have been limited to charging only "bona fide wholesale prices" for its products. Instead, the motivation that caused SunFlora to be unwilling to spend to prepare a franchise disclosure document is the same motivation that caused it to be unwilling to be satisfied with receiving only "bona fide wholesale prices." In fact, if SunFlora had charged only "bona fide wholesale prices," there would not be a "franchise" and no need for a franchise disclosure document. But, the revenue and profit plan of SunFlora would not have been satisfied with only "bona fide wholesale prices." As a result, SunFlora had to charge hidden franchise fees in the form of excess wholesale prices.

78.     The Franchisees suffered injury as a result of SunFlora's fraudulent inducement because they either (1) would not have entered into the Franchise Agreements at all or (2) would have negotiated different terms.

79.     The entire purpose of the franchise disclosure document is to provide potential franchisees with material information that they may want to consider and analyze before investing large amounts of money, time and energy into a franchisor-franchisee relationship.

80.     SunFlora's failure to provide the Franchisees with a franchise disclosure document, and all of the material information contained therein, was intentional and/or grossly negligent.

81.     YCBDSF, at the direction of SunFlora, is now attempting to repeat SunFlora's defective disclosure by delivering to Franchisees a franchise disclosure document that does not comply with the FTC Franchise Rule.  The pattern of activity that disregards the law continues.

WHEREFORE, the Plaintiffs respectfully request that this Court enter judgment as follows:

(a) Rescission of the Franchise Agreements; or alternatively,

(b) All money damages to which Plaintiffs are entitled; and

(c) An award of punitive damages; and

(d) Such other relief as this Court may deem to be just, proper, and equitable.

## COUNT III
## DECLARATORY RELIEF UNDER FLA. STAT. § 86.011, *et seq.*

82.    The Plaintiffs repeat and re-allege paragraphs 1-65 as if set forth in full herein.

83.    The Franchise Agreements contain "Non-Compete Clauses."  See Franchise Agreements at ¶ 5.

84.    The "Non-Compete Clauses," *inter alia*, purport to prohibit the Franchisees from being involved with any entity which sells any product containing "CBD Industrial Hemp Oils" ***within 100 miles*** of the Franchisees' stores for a period of two years after the termination of the Franchise Agreements.

85.    Pursuant to Fla. Stat. § 542.355(d), "Non-Compete Clauses" must be reasonably necessary to protect the legitimate business interests of SunFlora.  In this case, the "Non-Compete Clauses" fail the "reasonably necessary" test.

86.    In this case, the 100 mile non-competition radius is not reasonably necessary to protect the legitimate business interests of SunFlora.  The trade area(s) of the stores operated by the Franchisees as evidenced by the geographic areas in which its customers reside are far smaller than the 100 mile radius restriction set forth in the Agreements.  In fact, SunFlora has authorized the establishment and operation of other SunFlora stores at locations as close as six (6) miles from one or more locations operated by the Franchisees.

87.     Likewise, the "Non-Compete Clauses" contain a two-year term which is subject to a rebuttable presumption of being reasonable under Fla. Stat. § 542.355(d).

88.     Given the conduct of SunFlora with the Franchisees, it would be inequitable to allow SunFlora the benefit of the "Non-Compete Clauses" and the presumption of reasonableness under Fla. Stat. § 542.355(a) should be denied.

89.     The Plaintiffs are entitled to recovery of attorney's fees and costs incurred with respect to this matter from SunFlora pursuant to Fla. Stat. § 542.355(k).

WHEREFORE, the Plaintiffs respectfully request that this Honorable Court enter judgment as follows:

(a)   A declaration that the "Non-Compete Clauses" of the Franchise Agreements do not comply with Fla. Stat. § 542.355 and therefore are unlawful and unenforceable;

(b)   An award of attorney's fees and costs pursuant to Fla. Stat. § 542.355(k); and

(c)   Such other relief as this Court may deem to be just, proper, and equitable.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiffs

hereby demand a trial by jury on all issues so triable.

Dated:  April 1, 2022

<div style="margin-left:40%">

Respectfully submitted,

By: <u>/s/Richard G. Salazar</u>
Richard G. Salazar
Florida Bar No. 899615
**BUCHANAN INGERSOLL & ROONEY PC**
401 E. Jackson Street, Suite 2400
Tampa, FL  33602-5236
Telephone: (813) 222-8180
Facsimile:  (813) 222-8189
richard.salazar@bipc.com

Stanley J. Parker (*pro hac vice pending*)
Pennsylvania Bar No. 66013
Eric M. Spada (*pro hac vice pending*)
Pennsylvania Bar No. 311446
**BUCHANAN INGERSOLL & ROONEY PC**
501 Grant Street, Suite 200
Pittsburgh, PA 15219-4413
Telephone: (412) 562-8800
Facsimile:  (412) 562-1041
stanley.parker@bipc.com
eric.spada@bipc.com

*Counsel for Plaintiffs*

</div>